FRED M. PLEVIN (SBN 126185)
fplevin@paulplevin.com
JEFFREY P. AMES (SBN 234871)
james@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
401 B Street, Tenth Floor
San Diego, California 92101-4232
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendant
TWO JINN, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ESPARZA, individually, and on behalf of the general public and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWO JINN, INC., a California corporation doing business as "Aladdin Bail Bonds;" and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. SACV 09-00099 AG (RNBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TWO JINN, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OR FOR AN ORDER SPECIFYING MATERIAL FACTS NOT IN DISPUTE**<br><br>**Fed. R. Civ. Pro. 56**<br><br>Date:          May 24, 2010<br>Time:          10:00 a.m.<br>Courtroom:     10D<br>Judge:         Andrew J. Guilford<br>Magistrate Judge: Robert N. Block<br>Trial Date:    February 15, 2011<br>Complaint Filed: January 22, 2009 |

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

SACV 09-00099 AG (RNBx)

# TABLE OF CONTENTS

I.  INTRODUCTION..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

    A.  Aladdin's Retail Service of Obtaining Pre-Trial Release from Custody. ................................................................................................... 2

    B.  Esparza's Compensation Met the Requirements of Section 7(i). ......... 4

III.  THE HISTORY AND PURPOSE OF THE SECTION 7(i) EXEMPTION SUPPORT ITS APPLICATION TO A RETAIL BAIL ENTERPRISE ........... 5

        1.  Legislative History of Section 7(i). .......................................... 6

        2.  Applying the Exemption to Aladdin is Consistent with the Purposes of the FLSA. ........................................................... 8

IV.  ALADDIN IS UNQUESTIONABLY A "RETAIL OR SERVICE ESTABLISHMENT" UNDER SECTION 7(i). ...................................................... 10

    A.  Aladdin's Retail Stores Satisfy the Definition of a "Retail or Service Establishment" in Repealed Section 13(a)(2). ......................... 10

        1.  Nearly All of Aladdin's Revenue is From the Sale of Services. ................................................................................... 10

        2.  Aladdin's Pretrial Release Services are not for Resale. ........... 10

        3.  Pretrial Release Services are Recognized as Retail. ................. 11

            a.  Aladdin's Services Meet the Ordinary Definition of "Retail."............................................................................ 11

            b.  Aladdin's Stores are "Retail" for Zoning Purposes. ................... 12

            c.  Federal Industry Classifications Support a Finding that Bail Services are Retail. ...................................... 12

    B.  Aladdin's Retail Stores Easily Satisfy the DOL's Definition of a "Retail or Service Establishment."......................................................... 14

        1.  Aladdin's Retail Bail Stores are "Establishments." ................. 15

        2.  Aladdin Sells a Service to the General Public. ......................... 15

        3.  Aladdin Serves the Everyday Needs of the Community. .......... 16

        4.  Aladdin's Services are at the End of the Stream of Distribution. ............................................................................ 17

    C.  Aladdin Has More of a Retail Concept Than Businesses That Have Been Determined to Be a "Retail or Service Establishment" Under Section 7(i). .............................................................................. 17

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

i

SACV 09-00099 AG (RNBx)

D.    Bail Agencies are not on the DOL's List of Non-Retail Businesses .................. 20

1.    Aladdin is not an "Insurance Agency" in any Sense. ............................. 20

2.    Bail Agencies are not in the "Financial Services Business." .................. 24

V.    ESPARZA'S REMEDIAL STATE LAW CLAIMS FAIL WITH HIS FLSA CLAIMS ........................................................................................... 25

VI.    CONCLUSION ......................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

ii

SACV 09-00099 AG (RNBx)

## __Table of Authorities__

**Page(s)**

**FEDERAL CASES**

*A.H. Phillips, Inc. v. Walling*
   324 U.S. 490 (1945) ............................................................................... 5, 15

*Campbell v. G.P. Systems, Inc.*
   1993 WL 255442 (N.D. Cal. July 1, 1993) ............................................. 20

*Collins v. Horizon Training Centers, L.P.*
   2003 WL 22388448 (N.D. Tex. 2003) ............................................... 15, 19

*English v. Ecolab, Inc.*
   2008 WL 878456 (S.D.N.Y. 2008) ................................................... passim

*Gatto v. Mortgage Specialists of Ill., Inc.*
   442 F. Supp. 2d 529 (N.D. Ill. 2006) ......................................... 15, 18, 20, 24

*Gieg v. DDR, Inc.*
   407 F.3d 1038 (9th Cir. 2005) .............................................................. 6, 9

*Goldstein v. Dabanian*
   291 F.2d 208 (3d Cir. 1961) ............................................................... 19, 24

*Hodgson v. Centralized Servs., Inc.*
   457 F.2d 824 (4th Cir. 1972) .............................................................. 11, 19

*Idaho Sheet Metal, Inc. v. Wirtz*
   383 U.S. 190 (1966) ................................................................................. 7

*Int'l Fid. Ins. Co. v. City of New York*
   263 F. Supp. 2d 619 (E.D.N.Y. 2003) ............................................... 11, 12

*Martin v. The Refrigeration School, Inc.*
   968 F.2d 3 (9th Cir. 1992) ........................................................................ 6

*Mechmet v. Four Seasons Hotels, Ltd.*
   825 F.2d 1173 (7th Cir. 1987) ............................................................. 8, 9

*Mitchell v. Krout*
   150 F. Supp. 857 (N.D. Cal 1957) ......................................................... 20

*Mitchell v. Ky. Fin. Co.*
   359 U.S. 290 (1959) ................................................................................ 24

*Reese v. United States*
   76 U.S. 13 (1869) ................................................................................... 20

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

iii

SACV 09-00099 AG (RNBx)

*Reich v. Cruises Only, Inc.*
   1997 WL 1507504 (M.D. Fla. June 5, 1997) ...................................... 15, 16, 17, 18

*Reich v. Delcorp, Inc.*
   3 F.3d 1181 (8th Cir. 1993)............................................................................. 6

*Schwind v. EW & Assocs., Inc.*
   371 F. Supp. 2d 560 (S.D.N.Y. 2005)............................................... 10, 14, 16, 19

*Shultz v. Crotty Bros. Tex., Inc.*
   310 F. Supp. 761 (E.D. Tex. 1970) ................................................................ 11

*Stack v. Boyle*
   342 U.S. 1 (1951) ........................................................................................ 16

*Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*
   246 F. Supp. 2d 886 (S.D. Ohio 2003)........................................................... 19

*Wirtz v. Keystone Readers Servs., Inc.*
   418 F.2d 249 (5th Cir. 1969)......................................................................... 15

*Yi v. Sterling Collision Ctrs., Inc.*
   480 F.3d 505 (7th Cir. 2007)........................................................................... 7


**STATE CASES**

*Mann v Ark. Professional Bail Bondsman Licensing Board.*
   199 S.W.3d 84 (Ark. Ct. App. 2004) ............................................................ 23

*McDonough v. Goodcell*
   13 Cal. 2d 741 (1939)................................................................................... 22

*Ramirez v. Yosemite Water Co., Inc.*
   20 Cal. 4th 785 (1999) ................................................................................... 6


**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

29 C.F.R. § 779.23 ......................................................................................... 15

29 C.F.R. § 779.24 ......................................................................................... 14

29 C.F.R. § 779.300 ....................................................................................... 14

29 C.F.R. § 779.317 ................................................................................. 20, 24

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

iv

SACV 09-00099 AG (RNBx)

29 C.F.R. § 779.318 ......................................................................................... 15, 17

29 C.F.R. § 779.318(a) ............................................................................................ 14

29 C.F.R. § 779.318(b) ............................................................................................ 14

29 C.F.R. § 779.319 ......................................................................................... 15, 17

29 C.F.R. § 779.320 ................................................................................................ 13

29 C.F.R. § 779.324 ................................................................................................ 12

29 C.F.R. § 779.331 ................................................................................................ 10

29 C.F.R. § 779.334 ................................................................................................ 10

29 C.F.R. § 779.410 ................................................................................................ 14

29 C.F.R. § 779.411 ................................................................................................ 14

29 C.F.R. § 779.414 .................................................................................................. 8

15 Fed. Reg. 7250 (1950) ......................................................................................... 7

29 U.S.C. § 207(a) .................................................................................................... 5

29 U.S.C. § 207(i) ............................................................................................. 4, 5, 6

29 U.S.C. § 213(a)(2) ................................................................................................ 6

Fair Labor Standards Act § 7(i) ......................................................................... passim

Fair Labor Standards Act § 13(a)(2) .................................................................. passim

Fair Labor Standards Act § 213(a) ........................................................................ 20

Pub.L. No. 101-157 § 3(c)(1), 103 Stat. 938, 939 (1989) ...................................... 6


STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Cal. Bus. & Prof. Code § 17200 ............................................................................. 25

Cal. Code. Regs. Title 10, § 2067 .................................................................... 21, 23

Cal. Ins. Code § 1621 .............................................................................................. 23

Cal. Ins. Code § 1800 ...................................................................................... 22, 23

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

v

SACV 09-00099 AG (RNBx)

Cal. Ins. Code § 1800.75 ........................................................................... 23

Cal. Ins. Code § 1800(a) ........................................................................... 23

Cal. Ins. Code § 1801 ................................................................................. 23

Cal. Ins. Code § 1802.1 .............................................................................. 23

Cal. Ins. Code § 1802.5 ....................................................................... 23, 24

Cal. Ins. Code § 1830.42 ........................................................................... 22

Cal. Labor Code § 203 ............................................................................... 25

Cal. Wage Order 4-2001(3)(D) ..................................................................... 6

**OTHER AUTHORITIES**

17 Tex. Occ. Code Ann. § 1704.051 ............................................................ 23

Black's Law Dictionary 870 9th ed. 2009 .................................................... 21

Conn. Gen. Stat. § 29-145 .......................................................................... 23

Wash. Rev. Code. § 18.235.020 .................................................................. 23

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

vi

SACV 09-00099 AG (RNBx)

# I.   INTRODUCTION

Defendant Two Jinn, Inc. dba Aladdin Bail Bonds ("Aladdin") is a commercial pre-trial release services provider.  Its primary purpose is providing a retail service – obtaining a defendant's release from jail for a negotiated fee.

Class representative David Esparza was employed by Aladdin for just over one year.  As a retail bail agent, Esparza worked in one of Aladdin's storefront offices, delivering its core service to members of the general public who contacted Aladdin at all hours of the day or night by telephone, through its website, its call center, or by walking into one of its bail stores.  Esparza worked directly with customers, explaining Aladdin's services, negotiating payment terms, drafting documents, and securing his customers' release from custody.  Esparza was paid well – on average, he earned more than $5,000 in commissions each month.

It is undisputed that Esparza's substantial commissions satisfied the requirements of Fair Labor Standards Act ("FLSA") Section 7(i), 29 U.S.C. § 207(i).  Rather, liability hinges on whether Aladdin operates a "retail or service establishment" within the meaning of Section 7(i).  This narrow question is dispositive, but it is not a close call.  The undisputed facts establish that every characteristic of Aladdin's operation – the tangible, finite and immediately consumable personal service it provides, its general public clientele, its 24/7 storefront offices in retail areas in the community, its classic retail advertising approach and presence, and its classification as providing a retail/personal service by federal and state governments, including zoning requirements – lines up neatly with any common-sense notion of what is "retail," as well as the FLSA and Department of Labor's ("DOL") definitions of a "retail or service establishment."

Moreover, applying the 7(i) exemption here furthers the policies and purposes Congress sought to advance in creating it.  The FLSA's hourly overtime formula is ill-suited to Aladdin's bail agents, who are highly-paid commissioned employees in a consumer-driven, retail setting, where demand for services is

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1

SACV 09-00099 AG (RNBx)

unpredictable, and its application could depress earnings rather than increase them.

Courts routinely grant summary judgment for employers in Section 7(i) cases in a wide variety of industries when the undisputed facts establish that the employer was a "retail or service establishment" and the employee(s) were compensated in accordance with Section 7(i).  Here, the undisputed facts, as well as the applicable statute, regulations and underlying policies, all lead inexorably to the same conclusion:  Section 7(i) applies to Aladdin's bail agents.  Therefore, Aladdin is entitled to summary judgment, as each of Esparza's claims rests on an alleged right to overtime under the FLSA.

## II.    FACTUAL BACKGROUND

### A.    Aladdin's Retail Service of Obtaining Pre-Trial Release from Custody.

Aladdin provides an important service to the general public.  Specifically, for a fee, Aladdin contracts with its customers to get a criminal defendant out of jail. Like other commercial bail services providers,[1] this is Aladdin's primary purpose and the core of its operations.  (Declaration of Herb Mutter ["Mutter"] ¶ 5; Phillips ¶ 6; Ex. 1 ["Esparza"] 37:19-22.)  It is well-recognized that providing this service is the special role Aladdin plays in the criminal justice system.[2]  As a retail bail agent, Esparza's primary duty was providing bail services to consumers by arranging for the pre-trial release of members of the general public.

Aladdin provides its services through small, local storefront offices.  (Mutter ¶ 3; Exs. 4, 6.)  These stores operate 24/7 to meet customer demands for services, because the need for bail occurs without notice at any time, and requires an

---

[1] *See* Thomas H. Cohen, *Commercial Surety Bail and the Problem of Missed Court Appearances and Pretrial Detention*, 3rd Annual Conference on Empirical Legal Studies Papers, 331 (2008) ("Pretrial release in the U.S. courts is influenced by the presence of commercial bond agents who provide a service of releasing defendants in exchange for a fee . . . .").  Ex. 26.

[2] *See* Thomas H. Cohen & Brian A. Reaves, *Pretrial Release of Felony Defendants in State Courts,* Bureau of Justice Statistics Special Report, NCJ 214994 at 4 (Nov. 2007) (noting that a bail agent charges the defendant a fee for services in securing his or her freedom while awaiting disposition of his or her case).  Ex. 27.

immediate response. (Phillips ¶¶ 5, 9.) In addition to its "brick and mortar" stores, Aladdin advertises extensively; its ads appear in 600 yellow page directories, and air on television over 5,500 times per month. (Mutter ¶¶ 3, 12.) Members of the general public in need of Aladdin's services contact the company through its sophisticated website, "800" call center, or by directly calling or walking into a retail store. (Esparza 39:23-41:8.) Aladdin's stores are typically located among other retail stores and are usually found in close proximity to courthouses and detention facilities. (Mutter ¶¶ 3, 4, 12; Phillips Decl. ¶ 4; Esparza 18:12-19:14; 24:1-6; 24:18-25:6; 26:7-12; 26:19-25; 27:9-18; Ex. 6.) Licensed bail agents like Esparza staff Aladdin's retail stores, work "leads," and negotiate with customers to finalize the terms upon which Aladdin will provide its service of getting the defendant out of jail. (Esparza 27:19-28:8; 28:25-29:16; 30:4-13; 31:18-32:2; 36:3-15; 36:24-37:22; Mutter ¶¶ 4, 15; Ex. 23.)

Once an agreement is reached, Aladdin secures its customer's release from custody. Aladdin's service is completely performed, and its fee earned, upon the customer's release. The tool Aladdin uses to get the defendant out of jail is a "bail bond." (Esparza 55:1-7; 59:3-7; Mutter ¶¶ 5, 14; Phillips ¶ 8; Ex. 5.) By contractual arrangement with a licensed surety, Aladdin procures a bond which it files with the court. The surety's bail bond is in actuality a contract by which the surety promises the court that if Aladdin's customer fails to appear in court, the surety will pay the full bond amount to the court. (Mutter ¶¶ 5, 6, 7.) Aladdin is strictly a licensed bail agency, authorized only to provide bail services, and is not permitted by state law to sell insurance in any form. Thus, Aladdin is neither an insurer or a surety, nor an agent for an insurer or surety in order to sell any form of insurance product.

It is important to note that Aladdin does not "sell bonds." The contract between Aladdin and its customer is only to provide the service of getting the defendant out of jail -- it is not a contract to buy a bond. In fact, neither Aladdin

nor its customer is ever a party to the bond, and the customer never takes possession of, or even sees, the bail bond.  (Esparza 59:25-60:15; Phillips ¶ 11.)  Similarly, Aladdin does not provide its service to the court, or enter into any business transaction with the court.  Thus, the bail bond is simply a tool that Aladdin, as a licensed bail agency, is authorized to use non-secure its customer's release.

**B.      Esparza's Compensation Met the Requirements of Section 7(i).**

Section 7(i) requires that (1) plaintiff's regular rate of pay exceeded 1.5 times the minimum hourly rate; and (2) more than half of plaintiff's compensation for a representative period (not less than one month) is from commissions on goods or services.  29 U.S.C. § 207(i).

Esparza worked as a bail agent in Aladdin's Oakland store from September 2007 until his termination in July 2008.[3]  (Mutter ¶ 8; Esparza 9:22-24; 15:23-25; 17:4-20.)  Esparza was compensated on a commission basis, with a monthly draw against commissions of $2,500.  (Compl. ¶¶ 21-22; Mutter ¶ 9; Esparza 45:8-10; Exs 16-22, 24.)  During the 11 months that Esparza was a commissioned bail agent, he earned a total of $57,597 in commissions (over $62,000 annually).  (Mutter ¶ 10; Esparza 95:17-23; Ex. 13.)

Esparza's compensation fluctuated considerably.  His monthly commissions varied between $2,500 and $10,000.  (Esparza 12:14-16; 97:24-98:21; Mutter ¶ 10; Ex. 13.)  However, his effective hourly rate during this period always substantially exceeded 1.5 times the federal minimum wage.[4]  (Mutter ¶ 10.)

Because Aladdin is a "24/7" retail operation, Esparza's work hours varied

---

[3] Esparza was hired by Aladdin in July 2007.  Initially, he worked for Aladdin as a bail agent trainee, and was classified as non-exempt and was paid overtime for all hours worked in excess of 40 hours per week. (Esparza 68:2-15; Mutter ¶ 8.) Effective September 1, 2007, Esparza became a licensed bail agent paid on a commission basis.  (Esparza 68:16-69:3; Mutter ¶ 8.)  Consistent with the class definition approved by the Court, this action is based upon Esparza's compensation as a commissioned bail agent.

[4] Esparza admits that his claims and facts are "typical, if not identical" to those of the class members.  *See* Plaintiff's Class Certification Motion, p. 11, ll. 1-9.

1   significantly, and included workweeks in which he worked more, and less, than 40

2   hours.  (Mutter ¶ 11; Exs. 14, 15.)  Esparza did not receive overtime compensation

3   when he worked more than 40 hours in a workweek because the agreed upon terms

4   and conditions of his employment called for huge commissions to compensate him

5   for all hours worked and Aladdin considered him exempt from overtime.  (Ex. 24;

6   Mutter ¶¶ 10, 11.)  There is no dispute that Esparza was paid all wages earned under

7   the commission plan.  The issue before the Court is simply whether, as a

8   commissioned retail bail agent, Esparza was employed by a "retail or service

9   establishment" under Section 7(i), and therefore, properly classified as exempt.

10  **III.   THE HISTORY AND PURPOSE OF THE SECTION 7(i) EXEMPTION**

11  **SUPPORT ITS APPLICATION TO A RETAIL BAIL ENTERPRISE**

12          The FLSA was designed to provide "all our able-bodied working men and

13  women a fair day's pay for a fair day's work."  *A.H. Phillips, Inc. v. Walling*, 324

14  U.S. 490, 493 (1945) (quoting President Franklin D. Roosevelt, Message of the

15  President to Congress (May 24, 1934)).  To that end, the FLSA generally requires

16  employers to pay overtime wages to covered employees who work more than forty

17  hours in a workweek.  29 U.S.C. § 207(a).  However, the FLSA also contains over

18  30 exemptions from this overtime requirement, including Section 7(i), which

19  provides:

20          [n]o employer shall be deemed to have violated subsection
        (a) of this section by employing any employee of a retail
21      or service establishment for a workweek in excess of the
        applicable workweek specified therein, if (1) the regular
22      rate of pay of such employee is in excess of one and one-
        half times the minimum hourly rate applicable to him
23      under section 206 of this title, and (2) more than half his
        compensation for a representative period (not less than
24      one month) represents commissions on goods or services.

25  29 U.S.C. § 207(i).  There is no dispute that Esparza satisfies the compensation

26  portion of the Section 7(i) exemption.  Therefore, the only issue here is whether

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

5

SACV 09-00099 AG (RNBx)

1   Aladdin is a "retail or service establishment" within the meaning of the FLSA.[5]

2       **1.   Legislative History of Section 7(i).**

3       "The FLSA does not, standing alone, provide an answer" to the question of

4   whether a specific business qualifies as a "retail or service establishment." *Martin*

5   *v. The Refrigeration School*, *Inc.,* 968 F.2d 3, 5 (9th Cir. 1992).  Indeed, the only

6   statutory definition of that term is contained in a repealed statute, the former FLSA

7   Section 13(a)(2) [former 29 U.S.C. § 213(a)(2)].  The 13(a)(2) exemption was part

8   of the FLSA when it was first enacted in 1938, but was repealed in 1989. Pub.L.

9   No. 101-157 § 3(c)(1), 103 Stat. 938, 939 (1989); *see also English v. Ecolab, Inc.,*

10  2008 WL 878456, *3 (S.D.N.Y. 2008) (discussing legislative histories of Sections

11  13(a)(2) and 7(i)).

12      The 7(i) exemption, added in 1961, provided that "retail or service

13  establishment[s]" not qualifying for the 13(a)(2) exemption could meet the FLSA's

14  overtime requirements by paying commissioned employees more than 1.5 times the

15  minimum wage for all hours worked.  *See Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183

16  (8th Cir. 1993).  As the Ninth Circuit has observed, "[a]lthough § 213(a)(2) was

17  later repealed, courts have continued to apply its definition of 'retail or service

18  establishment' to Section 207(i)." *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir.

19  2005) (citing *id.*).  As discussed below, Aladdin easily satisfies the definition of a

20  "retail or service establishment" as contained in repealed Section 13(a)(2).

21      When Section 13(a)(2) was enacted in 1938, it was intended to exempt

22  "business . . . of a purely local nature." *English*, 2008 WL 878456 at *3.  Congress

---

23  [5] California has a similar "inside sales" exemption that requires employees to earn
24  more than one and half times the state minimum wage, and at least fifty percent of
   compensation from commissions.  However, unlike the FLSA, there is no "retail
25  concept" requirement in California's exemption.  As such, even given California's
   higher minimum wage, Esparza does not, and cannot, challenge retail bail agents'
26  overtime exemption under California law.  *See* Cal. Wage Order 4-2001(3)(D)
   (commissioned sales exemption applies where employee's earnings exceed one and
27  one-half times the state's minimum wage, and more than fifty percent of each
   employee's earnings are derived from commissions); *see also Ramirez v. Yosemite
28  Water Co., Inc.*, 20 Cal. 4th 785, 803 (1999).

re-affirmed this intent in 1949 when it amended the FLSA, in part to clarify the definition of "retail or service establishment."[6]  Congress explained that the terms "retail" and "service establishment" are used "in their customary meaning, in their customary application, as they were customarily understood in the various industries of the Nation . . . ." See *Idaho Sheet Metal, Inc. v. Wirtz*, 383 U.S. 190, 198-203 (1966) (discussion of FLSA legislative history referring to remarks of Senator Holland and Representative Lucas).  Thus, whether a business possesses a "retail concept" depends "on the basis of common knowledge as to what is recognized and what is not recognized as retail selling or servicing . . . ." *Id.*[7]

In 1961, when Congress modified Section 13(a)(2) again, it again sought to reaffirm its intent to exclude from coverage small local retail merchants (*see* S. Rep. No. 87-145, at 27 (1961)), but at the same time, it added Section 7(i) to apply the overtime exemption to large enterprises comprised of numerous establishments. *English*, 2008 WL 878456 at *3; *see also Yi v. Sterling Collision Ctrs., Inc.,* 480 F.3d 505, 508 (7th Cir. 2007) (applying the Section 7(i) exemption to a chain of auto repair shops that employed over 800 individuals nationwide).

In short, Congress has repeatedly affirmed its intent to exempt from the FLSA's overtime provisions those businesses that provide local, personal services

---

[6] In 1949, Section 13(a)(2) was amended to read:  "any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located.  A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."

[7] Establishments viewed by the sponsors of the amendment as being "traditionally regarded as retail" included grocery stores, hardware stores, clothing stores, dry goods stores, stationary stores, farm implement dealers, paint stores, furniture stores, restaurants, hotels, repair garages, watch repair establishments, beauty parlors, barber shops, hospitals, farm equipment repair shops, valet shops, household refrigerator repair shops, typewriter repair shops, exterminator service companies, and other such local establishments."  15 Fed. Reg. 7250 (1950) (citing Statement of Representative Lucas, 95 Cong. Rec. 11004 (1949), and Statement of Senator Holland, 95 Cong. Rec. 12502, 12506 (1949), cited in *Idaho Sheet Metal, supra,* 383 U.S. at 203.

1   to members of the community, regardless of size.  There is no question that Aladdin

2   provides such an inherently local service to members of the community who need

3   pre-trial release services.

4   **2.    Applying the Exemption to Aladdin is Consistent with the Purposes of the FLSA.**

5

6   As Judge Posner noted over 20 years ago, given the relative lack of clarity in

7   the statute, in order to determine whether employees are properly classified as

8   exempt under Section 7(i), courts should determine what interpretation would best

9   advance the legislative purpose for the exemption.  *Mechmet v. Four Seasons*

10  *Hotels, Ltd.*, 825 F.2d 1173, 1175-76 (7th Cir. 1987).  Here, an examination of that

11  legislative purpose reveals that Aladdin's retail bail business is exactly the type of

12  business for which the exemption was created.

13  The courts have identified three primary Congressional goals of the FLSA's

14  hourly overtime requirement:  (1) to prevent workers who (perhaps out of

15  desperation) are willing to work long hours from taking jobs away from those

16  preferring to work short hours; (2) in this same vein, to spread work and thereby

17  reduce unemployment; and, (3) to protect workers from health risks associated with

18  working long hours.  *Id*. at 1175-76.  Yet, as the Court of Appeals in *Mechmet* and

19  DOL regulations recognize, such purposes are not served by applying an hourly

20  overtime premium provision to highly-compensated commissioned employees in

21  retail operations: these employees do not perform this work out of desperation and

22  do not take jobs away from others who would work fewer hours, and long hours are

23  unlikely to result in workplace accidents due to worker fatigue.  *See id.* at 1176; 29

24  C.F.R. § 779.414.  Clearly, highly-compensated commissioned employees like

25  Esparza are not the kind of employees the FLSA was designed to protect.

26  At the same time, the FLSA's hourly overtime formula is ill-suited to highly-

27  paid commissioned employees in a consumer-driven, retail setting, where the

28  demand for services, and thus work schedules and hours, is volatile and

unpredictable.  As the Ninth Circuit said in *Gieg*: "[u]nlike most other workplaces, where the workload is relatively predictable and lends itself to shift work and overtime, the work at 'big ticket' item dealerships is driven by the vagaries of consumer demand and is inherently unpredictable."  407 F.3d at 1046.  *See also Mechmet*, 825 F.2d at 1176.  Employers in these operations could not easily cope with such conditions by placing a ceiling on employee hours and then hiring others to take up the slack.  *Mechmet*, 825 F.2d at 1176.  And if the employer imposed such a ceiling, commissioned employees would experience heightened volatility in their earnings week to week that could not be ameliorated by working more hours to earn more commissions in "down weeks."  Thus, the courts concluded the exemption was particularly apt in these situations.  *See Gieg*, 407 F.3d at 1046; *Mechmet*, 825 F.2d at 1176-77.

The volatility and unpredictable nature of consumer demand experienced by "big ticket" retail stores pales in comparison to that of bail stores.  Bail stores must operate 24/7 to respond to individual consumer demand, and combined with the typically unexpected but immediate need for bail services, such conditions create highly volatile and unpredictable conditions that neither bail stores nor their employees can readily control or manage easily.  (Phillips ¶ 10; Mutter ¶ 16; *see also* Esparza 97:19-100:25.)  Thus, application of the exemption is particularly apt in the case of a retail operation like Aladdin's.

Finally, application of an hourly overtime formula in these settings would negatively impact employees.  As noted above, the hourly overtime formula would substantially amplify the weekly fluctuations in earnings.  Given the employer's difficulty in scheduling to cope with such irregular and volatile conditions, a reduction in the commission rate to manage the overtime premium would be expected, ultimately serving to depress the employees' earnings rather than increase them.  *Mechmet*, 825 F.2d at 1176.

///

IV. **ALADDIN IS UNQUESTIONABLY A "RETAIL OR SERVICE ESTABLISHMENT" UNDER SECTION 7(i).**

Whether one examines the now-repealed Section 13(a)(2), the DOL's interpretive regulations, or case law from around the country, the conclusion that Aladdin operates a "retail or service establishment" is obvious and inescapable.

**A.** **Aladdin's Retail Stores Satisfy the Definition of a "Retail or Service Establishment" in Repealed Section 13(a)(2).**

As noted above, prior to being repealed in 1989, Section 13(a)(2) provided an imprecise definition of a "retail or service establishment": "[A]n establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Aladdin comfortably satisfies this definition.

1. **Nearly All of Aladdin's Revenue is From the Sale of Services.**

Close to 100% of Aladdin's annual revenues are derived from fees collected from the sale of its core service of obtaining the release of its customers from pre-trial detention. (Mutter ¶ 4.)

2. **Aladdin's Pretrial Release Services are not for Resale.**

"A sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article." 29 C.F.R. § 779.331; *see also* 29 C.F.R. § 779.334 (examples of "resold services" include sale of watch repair services to jewelers who resell repair services, dental laboratory repair services resold by dentists); *Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 564 n.3 (S.D.N.Y. 2005).

Aladdin sells its services directly to the ultimate consumer – the customer who is seeking release from custody. That personal service is tangible as the defendant walks out of jail -- the service is immediately and completely enjoyed by the defendant. It is highly personal, and cannot be used by any other individual, or

1  even by the defendant again.  Much like a haircut, pretrial release is a purely

2  personal service that is not and could not be resold.  (Phillips ¶ 11; Esparza 64:25-

3  65:11.)

4         **3.     Pretrial Release Services are Recognized as Retail.**

5         Whether a particular business is a "retail or service establishment" is a

6  question of law which properly should be weighed and determined "by the ordinary

7  and common-place connotation accorded in layman's parlance to 'retail.'"  *Hodgson*

8  *v. Centralized Servs., Inc.*, 457 F.2d 824, 827 (4th Cir. 1972).  "[T]here is no

9  touchstone or uncomplicated test to apply in resolving the inquiry as to whether a

10 transaction is retail, but rather a case by case approach is in order with the referents

11 being common sense and common parlance."  *English,* 2008 WL 878456 at *12

12 (quoting *Shultz v. Crotty Bros. Tex., Inc.*, 310 F. Supp. 761, 767 (E.D. Tex. 1970));

13 *see also* 95 Cong. Rec. 12505-06 (retail concept to be determined by "the common

14 understanding of people generally as to what is meant by a retail sale or service or

15 by a retail or service establishment").

16        In this case, several factors support the conclusion that Aladdin's services are

17 "recognized as retail."

18        **a.     Aladdin's Services Meet the Ordinary Definition of "Retail."**

19        The definition of "retail" is "to sell in small quantities directly to the ultimate

20 consumer."  *See* Merriam-Webster online dictionary, http://www.merriam-

21 webster.com/dictionary/retail.  As a matter of common sense, Aladdin's retail stores

22 fall squarely within this definition.[8]  Working from storefronts in cities and towns

23 throughout California, and supported by advertising in print, signs, television and

24 radio, as well as a sophisticated call center and internet website, Aladdin's retail

25 bail agents work directly with their customers to provide a single, critical service:

---

26 [8] *See* Cohen & Reaves, *supra* at 4 (noting that the bail agent charges the defendant a
27 fee [usually 10% of the bail amount] for services); Ex. 27; *see also Int'l Fid. Ins.*
   *Co. v. City of New York*, 263 F. Supp. 2d 619, 625 (E.D.N.Y. 2003) (characterizing
28 a bail bondsman as a "retail seller of bail").

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

11

SACV 09-00099 AG (RNBx)

1    quick release from custody.  In return, Aladdin collects a set fee from the customer.

2    This business model meets any dictionary, or common-sense, definition of "retail."

3              **b.      Aladdin's Stores are "Retail" for Zoning Purposes.**

4          Aladdin's storefront establishments are typically considered by local

5    authorities as retail businesses for purposes of municipal zoning requirements.[9]

6    (Mutter ¶ 12.)

7              **c.      Federal Industry Classifications Support a Finding that Bail
                          Services are Retail.**

8          Recognized classifications from governmental research and statistical

9    organizations are to be considered when determining whether a business is

10   "recognized as retail in the particular industry."  *See* 29 C.F.R. § 779.324 (retail

11   determination "must take into consideration . . . the understanding and knowledge

12   of . . . private and governmental research and statistical organizations").   Here, the

13   U.S. government's preeminent industry classification system recognizes the retail

14   nature of bail services by classifying bail services as "personal services."

15         The North American Industry Classification System ("NAICS")[10] is used by

16   federal agencies to classify industries for purposes of maintaining statistical data on

17   the U.S. business economy.  It is also used by the DOL and other agencies for a host

18   of authoritative and critical administrative, regulatory, and other non-statistical

19

20

_____

21   [9] For example, in Vista, California, Aladdin's retail store is in a commercial zone
     along with bargain basement stores, check cashers, pawn shops, tattoo parlors and
22   day spas.  (Mutter ¶ 12.)  In Riverside, the Municipal Code requires bail bond
     businesses to obtain "conditional use" permits, and sets forth detailed site location,
23   operation, and development standards.  *Id.*  Other businesses which require
     "conditional use" permits in Riverside include arcades/internet cafes, bars/saloons,
24   check cashing, pawn shops, and tattoo and body piercing parlors.  *Id.*  In Long
     Beach, Aladdin's storefront is located within the Downtown Core District, and
25   under the Municipal Code. Aladdin's retail bail offices are deemed "personal
     services," along with barber/beauty shops, dry cleaners, tanning salons, repair
26   shops, fitness centers, laundromats, locksmiths, and travel agents.  *Id.*

27   [10]  Selected sections of the NAICS are attached to Aladdin's NOL as Exs. 28-35, as
     indicated *infra.*

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

12

SACV 09-00099 AG (RNBx)

purposes.[11]  Importantly, NAICS classifies businesses according to *how* their products and services are produced and delivered.[12]  This is analytically analogous to the inquiry needed to interpret Section 7(i).  Consequently, the NAICS is particularly instructive here.

The NAICS expressly classifies "bail bonding or bondsperson services" as "personal services" by including them as part of Industry 812990 ("All Other Personal Services").  Ex. 32.  This classification is a subset of a broader industry group which includes "establishments primarily engaged in providing personal services (except personal care services, death care services, or drycleaning and laundry services)," Industry 8129 ("Other Personal Services").  Ex. 31.  In turn, this industry group is part of the broader subsector 812 ("Personal and Laundry Services"), which includes "establishments that provide personal and laundry services . . . [including] personal care services; death care services; laundry and dry cleaning services; and a wide range of other personal services, such as pet care (except veterinary) services, photofinishing services, temporary parking services, and dating services." Exs. 29, 30.

Many of the businesses classified as "personal services" by the NAICS are exactly the types of retail industries Congress intended to bring within the scope of 7(i).  In fact, NAICS classifies bail services alongside a variety of other businesses that the DOL has specifically found to possess a retail concept.[13]

---

[11] For example, the DOL relies on the NAICS for its Current Employment Statistics program, Quarterly Census of Employment and Wages, Mass Layoff Statistics, Illnesses, Injuries and Fatalities program, Labor Productivity and Costs programs. Exs. 40-44.

[12] Fehmida Sleemi, *Employment Cost Index publication plans*, Monthly Labor Review 6, 7 (Apr. 2006). Ex. 39.

[13] The following business establishments are classified as "Other Services" by the NAICS and included in the DOL's partial list of establishments having a retail concept: automobile laundries / car washes; automobile repair shops; barber shops; beauty shops; cemeteries; crematories; embalming establishments; funeral homes; household refrigerator service and repair shops; masseur establishments; public (footnote continued on next page)

**B.    Aladdin's Retail Stores Easily Satisfy the DOL's Definition of a "Retail or Service Establishment."**

The DOL has promulgated a series of regulations to address the application of the "retail or service establishment" definition. *See* 29 C.F.R. §§ 779.300 *et seq.* Outdated as they may be, the regulations provide the DOL's only interpretive guidance regarding the "retail or service establishment" concept. *Schwind*, 371 F. Supp. 2d at 564.[14]  As discussed below, Aladdin's retail stores easily fit within the DOL's definition of a "retail or service establishment."

The DOL regulations articulate the characteristics of a retail or service establishment as follows:

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318(a).  However, "Congress also intended that the retail exemption extend in some measure beyond consumer goods and services to embrace certain products almost never purchased for family or noncommercial use." 29 C.F.R. § 779.318(b).  Courts must consider all circumstances relevant to the business at issue as there is "no bright line rule" for the determination. *Schwind*, 371 F. Supp. 2d at 565; 29 C.F.R. § 779.318(b).

---

(footnote continued from previous page)
baths; public parking lots; parking garages; scalp-treatment establishments; shoe repair shops; shoeshine parlors; and undertakers.  See 29 C.F.R. §779.320 (DOL partial list of establishments with a retail concept).

[14] The DOL addresses the Section 7(i) exemption at 29 C.F.R. §§ 779.410 *et seq.*, but directs the reader to the definition of "retail or service establishment" as set forth in Section 779.24 and the application of this term in Subpart D.  *See* 29 C.F.R. § 779.411.  A number of courts have looked to the "779" series of regulations to determine whether plaintiffs worked for "retail or service establishment" for purposes of the Section 7(i) exemption.  *See English*, 2008 WL 878456 at *5, and cases cited therein.

Recently, one district court provided this summary of the essential characteristics of an establishment having a "retail concept" under Section 7(i): "(1) the employer sells to the general public; (2) it serves the everyday needs of the community; and (3) it is at the end of the stream of distribution and does not take part in the manufacturing process." *Gatto v. Mortgage Specialists of Ill., Inc.,* 442 F. Supp. 2d 529, 540 (N.D. Ill. 2006) (citing *Collins v. Horizon Training Centers, L.P.*, No. Civ. A. 3:02CV1310-L, 2003 WL 22388448, at *6 (N.D. Tex. 2003), and *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 WL 1507504, at *3 (M.D. Fla. June 5, 1997)); s*ee also* 29 C.F.R. § 779.318 and 779.319.  However the test is framed, Aladdin's stores unquestionably satisfy every element.

**1.    Aladdin's Retail Bail Stores are "Establishments."**

Aladdin's retail bail stores are clearly "establishments."  Aladdin's stores, including the Oakland office where Esparza worked, are distinct, physical stores. (Mutter ¶ 4; Phillips ¶ 4.)  Customers come to these stores so that Aladdin's bail agents can provide its core service, i.e., release from custody.  (Esparza 37:19-22; Mutter ¶ 5.)  As such, each of Aladdin's retail stores is clearly an "establishment." *See* 29 C.F.R. § 779.23 ("establishment" is a distinct, physical place of business); *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 496 (1945) ("Congress used 'establishment' as . . . meaning a distinct physical place of business.")

**2.    Aladdin Sells a Service to the General Public.**

A qualifying "retail or service establishment" must be accessible to the general public.  *See* 29 C.F.R. § 779.319.  Accessibility may be achieved by means of either a physical or electronic communication.  *See Wirtz v. Keystone Readers Servs., Inc.*, 418 F.2d 249, 257 (5th Cir. 1969) (telephone contact is sufficient to satisfy the public accessibility requirement); *English*, 2008 WL 878456 at *10 (pest control specialists are accessible to the public via telephone); United States DOL Wage and Hour Op. Letter, 1999 DOL WH Lexis 125 (December 16, 1999) (an establishment that sells groceries via a website is a retail or service establishment).

Aladdin's services could not be more "accessible to the public." Aladdin advertises its services broadly through print and broadcast media. (Mutter ¶ 13.) All of Aladdin's retail stores are accessible to the general public 24 hours a day, 365 days a year. (Esparza 42:18-25; Mutter ¶ 13; Phillips ¶ 5.) Aladdin also maintains a sophisticated website (www.aladdinbailbonds.com) and a call center that operates 24 hours a day to ensure that its services can be provided to the general public, day or night. (Esparza 44:6-17, Mutter Dec. ¶ 3; Ex. 3.) In fact, members of the public who require pretrial release services can deal with an Aladdin bail agent via telephone or in person at any time, on any day of the year. (Mutter ¶ 13, 14; Phillips ¶¶ 5, 7.)

### 3.    Aladdin Serves the Everyday Needs of the Community.

Courts have broadly interpreted the requirement that a retail or service establishment "serve the everyday needs of the community."

In *Cruises Only*, the court concluded that a travel agency selling cruise vacations provided services to the public, even though "vacations are not an everyday occurrence and are the exception, not the rule, regarding the needs of the community on a daily basis." 1997 WL 1507504 at *4. Similarly, in *English*, the court concluded that an employer providing pest control services to commercial and residential customers provided "services" to the public and served the everyday needs of the community. 2008 WL 878456 at *16. And in *Schwind*, the court concluded that a firm providing computer training to commercial businesses served the everyday needs of the community. 371 F. Supp. 2d at 564.

Every day, Aladdin's bail agents arrange for members of the public to be released from custodial detention. (Esparza 37:19-22; Mutter ¶¶ 5, 15, 16; Phillips ¶¶ 5, 8.) Without belaboring the obvious, obtaining freedom while awaiting disposition of a criminal case is far more important to members of the public who are accorded their constitutional right to reasonable bail than cruise vacations, computer training, or a roach-free business. Indeed, the right to bail is a fundamental underpinning of the criminal justice system and an essential guardian

of the presumption of innocence.  *See Stack v. Boyle*, 342 U.S. 1, 4 (1951).

Accordingly, Aladdin meets the essential requirement that its retail bail stores serve the everyday needs of the community.

### 4.     Aladdin's Services are at the End of the Stream of Distribution.

Finally, Aladdin's business is at the end of the stream of distribution and it does not take part in the manufacturing process.  *See* 29 C.F.R. § 779.318 and 779.319.  Aladdin does not provide or sell a product, and thus nothing is manufactured.  Rather, it sells a specific service to members of the public **--** release from pretrial detention.

Aladdin's retail bail services have a distinct beginning and end.  *See Cruises Only*, 1997 WL 1507504 at *5 ("retail concept" requires providing a good or service "at the end of the distribution chain" which in turn has been described as "providing a service with a distinct beginning and end").  Customers contact Aladdin to get released from custody.  If Aladdin agrees to provide its service, it secures the customer's release, and its fee is fully earned.  (Mutter ¶ 17.)

Accordingly, as a matter of law, Aladdin's retail stores satisfy each of the characteristics of a "retail or service establishment."  Aladdin's bail agents work in a physical space, are readily and easily accessible to the general public, and provide Aladdin's customers with an immediately "consumed" service that is not for resale.

## C.     Aladdin Has More of a Retail Concept Than Businesses That Have Been Determined to Be a "Retail or Service Establishment" Under Section 7(i).

In light of the absence of a precise statutory definition of "retail," and the limited utility of the DOL regulations interpreting former Section 13(a)(2), recent case law from the Ninth Circuit and other federal courts provides the best source of analysis and guidance for the practical, modern day application of Section 7(i).

Although bail services in America predate the Constitution, Aladdin could locate no case law specifically addressing whether a retail bail establishment has a "retail concept" for purposes of Section 7(i).  However, a review of cases applying

Section 7(i) to a variety of other businesses leaves only one conclusion:  Aladdin's retail stores are "retail" -- even more so than other establishments that courts have found to fall within the scope of Section 7(i).[15]

In *Gatto,* the court applied the retail definition set forth in Section 13(a)(2) and the DOL regulations, and held that mortgage brokers are covered by the Section 7(i) exemption.  442 F. Supp. 2d at 538, 540.  Like the mortgage brokers in *Gatto*, Aladdin's bail agents deal directly with customers to provide a distinct, specific task.  However, retail bail agents provide even more of a "retail" service to consumers.  Unlike a typical mortgage broker, Aladdin's bail agents are always available, prepared to immediately provide their services to anyone who needs them.  And while a mortgage broker acts as an intermediary between institutional lenders and the customer, Aladdin's bail agents do not serve as middlemen – rather, they sell Aladdin's services directly to members of the general public.

Similarly, Aladdin's retail bail agents provide more of a vital, everyday service to the general public than many of the businesses recognized as retail by the DOL's regulations. As the *Cruises Only* court noted, it would be "arbitrary and capricious to find that [the establishments listed as "retail" by the DOL] serve the everyday needs of the community any more than a travel agency."  1997 WL 1507504 at *4.  In fact, much like bail services, "most individuals probably use a travel agency more often than a taxidermist or a crematorium."[16]  *Id*.

In *English*, the court found that pest control specialists who worked from

---

[15] The DOL has also issued a number of opinion letters finding the existence of the retail concept in a variety of businesses.  *See* DOL Opinion Letters FLSA 2006-33 (Sept. 14, 2006) (propane gas dealers); FLSA 2006-22 (June 23, 2006) (service technicians for a franchisee association); 1994 WL 1004771 (April 11, 1994) (goods and services sold by animal hospital); FLSA 2005-44 (Oct. 24, 2005) (in-home carpet and upholstery cleaning business); FLSA 2005-53 (Nov. 14, 2005) (health and athletic clubs); FLSA 2006-9 (Mar. 10, 2006) (private health club).  Ex. 37.

[16] According to statistics published by the FBI, in 2007, there were 14.2 million arrests in the United States, which equates to 5.3% of the U.S. population.  (FBI Arrest Statistics, Ex. 36.)

their homes and provided services almost exclusively to commercial entities were exempt under Section 7(i).  2008 WL 878456.  Aladdin's bail services, which are sold from publicly accessible stores directly to individual members of the general public, clearly have a far stronger retail concept.  Of course, pretrial release is far more important to customers than a pest-free office.

Several courts have found that businesses providing computer software training were retail establishments for purposes of Section 7(i).  *See Schwind*, 371 F. Supp. 2d 560; *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886 (S.D. Ohio 2003); *Collins*, 2003 WL 22388448.  In fact, the *Schwind* court applied Section 7(i) to a firm that provided training primarily to commercial businesses, finding that the business was still a retail establishment because it served the everyday needs of the community and stood at the end of the stream of distribution.  371 F. Supp. 2d at 567.  If such software training services are retail, there can be no doubt that Aladdin's retail bail agents meet the Section 7(i) exemption.  Not everyone may need computer training, and those that do will not need those services immediately.  Aladdin's retail bail services, on the other hand, are *always* accessible to members of the public.  And certainly, pretrial release from custodial detention is a more important community need than training on the newest computer software.

In *Hodgson v. Centralized Services, Inc.*, 457 F.2d 824, 827 (4th Cir. 1972), the Fourth Circuit found that an income tax services business had a "retail concept" because its transactions were "numerous and relatively small," were offered to the general public in a limited area, and were "provided for the comfort and convenience of such public in the course of its daily life."  Similarly, the Third Circuit found that employees who cashed checks, accepted utility payments and issued money orders qualified for the retail exemption.  *Goldstein v. Dabanian,* 291 F.2d 208 (3d Cir. 1961).  The court noted that "more than 50% of the business handled by these [employees] was local business.  They served customers in the community.  They

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

19

SACV 09-00099 AG (RNBx)

1   sold no goods but they did provide a service as a convenience to their customers for

2   which the latter paid." *Id.* at 211.  The *Hodgson* and *Goldstein* courts could well

3   have been describing Aladdin's pretrial release services.

4          Finally, courts in California have reached similar conclusions in cases

5   involving Section 7(i).  In *Mitchell v. Krout*, 150 F. Supp. 857, 860 (N.D. Cal

6   1957), the court held that a private investigative agency fell within the ambit of

7   Section 13(a)(2).  And in *Campbell v. G.P. Systems, Inc.*, No. C 92-20085 JW, 1993

8   WL 255442 (N.D. Cal. July 1, 1993), the court found that a business engaged in

9   selling a variety of home-related products (such as security systems, intercom

10  systems, and water treatment systems) was a retail establishment for purposes of the

11  exemption.

12         Against the backdrop of this authority, the Section 7(i) exemption clearly

13  applies to Aladdin's retail bail agents.

## D.     Bail Agencies are not on the DOL's List of Non-Retail Businesses.

15         Bail services are not a new concept.  On the contrary, bail dates back to the

16  Bill of Rights and is enshrined in the Eighth Amendment to the Constitution.  *See*

17  *Reese v. United States*, 76 U.S. 13, 21 (1869).  Despite this, bail agencies do not

18  appear in the DOL's list of over 130 establishments it categorizes as lacking a

19  "retail concept," including accounting firms, credit companies, finance companies,

20  insurance brokers, loan offices, and tax services.  29 C.F.R. § 779.317; *see also*

21  *Gatto*, 442 F. Supp. 2d at 540 (mortgage broker found to be a retail establishment

22  because it was not on DOL's list of establishments lacking a retail concept).

### 1.     Aladdin is not an "Insurance Agency" in any Sense.

24         The DOL's "non-retail" list includes "[i]nsurance; mutual, stock and fraternal

25  benefit, including insurance brokers, agents, and claims adjustment offices."  29

26  C.F.R. § 779.317.[17]  Plaintiffs' counsel has advised that Esparza intends to argue

_____

[17] As discussed at length in *English*, the DOL regulations are of dubious value for
several reasons:  (1) They interpret FLSA Section 213(a), which was repealed in
(footnote continued on next page)

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

20

SACV 09-00099 AG (RNBx)

1   that the retail sales exemption does not apply to Aladdin because in California

2   Aladdin is regulated by the Department of Insurance.  This tautological argument is

3   baseless, because Aladdin is a retail service provider, not an insurance agency.

4   Indeed, the State of California does not treat bail stores as insurance providers or

5   agencies.  On the contrary, the state prohibits bail stores from selling insurance or

6   even holding themselves out as sellers of insurance. [18]  10 Cal. Code. Regs. § 2067.

7          Aladdin only contracts with its customers to perform services and does not

8   sell or provide insurance in any sense.[19]  Rather, Aladdin merely procures a bond as

9   a tool and files it with the court in order to get the defendant released.  (Mutter ¶ 6,

10  7.)  Aladdin's customer is not a party to the bail bond; in fact the customer typically

11  does not even see the bond.  (Mutter ¶¶ 5, 17; Esparza 59:25-60:15.)  The

12  customer's fee for its services goes to Aladdin, not the surety.  (Mutter ¶ 7.)

13         Retail bail services differ fundamentally and substantially from insurance

14  products.  Retail bail services are fully-consumed immediately by the customer.  An

15  insurance agency sells an intangible financial product that is not immediately

16  "consumed," and may not be consumed at all.  Further, in contrast to insurance,

17  Aladdin's pretrial release services are needed by members of the public on short

18  _____

19  (footnote continued from previous page)
    1989; (2) they have not been updated since 1970, and are "frozen in time, [while]
20  the world has changed"; (3) they are "interpretive rules" not "legislative rules";
    and (4) unlike other FLSA regulations, they were not promulgated pursuant to a
21  Congressional delegation of rulemaking authority.  2008 WL 878456 at *5-*8
    (concluding that the regulations "may persuade, if on analysis they are in fact
22  persuasive").

23  [18] In response to a blind email inquiry, a Senior Insurance Compliance Officer with
    the California Department of Insurance stated that "bail agents are not insurers or
24  insurance companies," that "they have their own separate license and have separate
    regulations governing their conduct," and that "bail agents should not represent
25  themselves as a fidelity or a surety insurer." Ex. 25; Hayes Decl. ¶3.

26  [19] "Insurance" is "a contract by which one party (the insurer) undertakes to
    indemnify another party (the insured) against risk of loss, damage, or liability
27  arising from the occurrence of some specified contingency, and usu. to defend the
    insured or to pay for a defense regardless of whether the insured is ultimately found
28  liable."  Black's Law Dictionary 870 9th ed. 2009.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

21

SACV 09-00099 AG (RNBx)

notice, based on an immediate need. Once the bail agent secures the customer's release, the service is concluded. (Mutter ¶¶ 17, 18.) Again, in stark contrast to insurance, Aladdin's customers receive no protection against future risk or liability; the customer simply obtains the immediate service of release from custody.

The NAICS recognizes the fundamental difference between the insurance and bail industries by classifying them differently.[20] Despite the breadth of businesses included alongside the bail bond business in Sector 81 ("Other Services") of the NAICS, it does not include any of the insurance services industries, but rather reserves an entirely separate and distinct classification for the latter.[21]

While it is true that bail agents are regulated in California by the Department of Insurance, this is irrelevant to the issue before this Court. In 1937, the California legislature enacted the Bail Bond Regulatory Act (Stats. 1937, p. 1797), which incorporated sections 1800 to 1830.42 into the Insurance Code, which provide for the regulation of the "bail bond business." However, the state legislature did not vest regulatory power with the Department of Insurance because of any conclusion that bail was a form of insurance. Instead, the rationale stemmed from nothing more than a conclusion that:

> [t]he conduct of a bail bond business is such a business as is subject to reasonable regulation under the police power of the state . . . [and] The legislature has properly determined that abuses have arisen or may arise which make it necessary or desirable that there be some public supervision of that business.

*McDonough v. Goodcell*, 13 Cal. 2d 741, 746 (1939).[22]

---

[20] In fact, Aladdin can locate no instance in which a federal agency has classified bail as insurance.

[21] Insurance industries are classified in NAICS Sector 52 ("Finance and Insurance") and include "insurance carriers" (subsector 5241) and "Agencies, Brokerages and Other Insurance Related Activities (subsector 5242). Exs. 33-35.

[22] Idaho also vests regulation of bail agents with the state Department of Insurance. *See* Idaho Code Ann., tit. 41. Despite being regulated by the Department of
(footnote continued on next page)

Further, the mere fact that California assigned the oversight of bail bond agencies to the Department of Insurance cannot possibly control the classification of bail agencies for purposes of federal wage and hour law.  The commercial bail industry of which Aladdin is a part is regulated from state-to-state by a wide variety of various state agencies or departments.  Indeed, if states' decisions on the most convenient mechanism for regulating bail controlled the question of whether bail agencies meet Section 7(i)'s "retail concept" requirement, the interpretation of the FLSA would vary from state to state.[23]

The California regulations governing the bail bond business further highlight the differences between insurers and bail agencies.  The Department itself does not treat bail agencies as insurers or insurance sales entities.   Unlike insurance products such as auto, property and life insurance, insurers in California are specifically prohibited from selling pretrial release services directly to the public. Cal. Ins. Code §§ 1800(a), 1800.75.  Conversely, bail bond agencies like Aladdin are strictly prohibited from holding themselves out as insurers.  Cal. Code. Regs. tit. 10, § 2067 ("No bail licensee shall directly or indirectly represent that he is a fidelity or surety insurer. . . .")  Moreover, insurers and bail agents have entirely separate regulations governing their conduct.[24]  In fact, certain types of bail licensees, called bail permittees, can post bail for a profit without the use of a surety product at all.[25]

---

(footnote continued from previous page)
Insurance, the Idaho Code specifically provides that "[B]ail agents provide an important local retail service to the retail consumer of bail bonds." Ex. 38.

[23] For instance, in Washington, bail agencies are regulated by the Department of Licensing, which also regulates beauty salons, auto dealers and cigarette retailers. Wash. Rev. Code. § 18.235.020.  Texas uses "county bail bond boards" composed of judges, district attorneys and public defenders.  *See* 17 Tex. Occ. Code Ann. § 1704.051 *et seq.*  Arkansas has a Professional Bail Bondsman licensing board.  *See Mann v Ark. Professional Bail Bondsman Licensing Board.*, 199 S.W.3d 84 (Ark. Ct. App. 2004).  Connecticut regulates bail through the Commissioner of Public Safety.  *See* Conn. Gen. Stat. § 29-145.

[24] Bail licensees are governed by Chapter 7 of the Insurance Code, section 1800 *et seq.*, while insurance agents are regulated by Chapter 5, sections 1621, *et seq.*

[25] Bail licenses in California include bail agents, bail permittees, and bail solicitors. Cal. Ins. Code § 1801. While bail agents must file a notice of appointment
(footnote continued on next page)

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

23

SACV 09-00099 AG (RNBx)

1   Nonetheless, like bail agents, bail permittees are governed by the Insurance Code.

2   Cal. Ins. Code § 1802.5.

3       In short, the fact that California chose to regulate bail agencies through its

4   Department of Insurance is of no help to Esparza.  In fact, it is apparent from the

5   regulations that bail agencies are not insurance providers.  Thus, they are not

6   precluded from claiming the retail exemption under Section 7(i).

7       **2.      Bail Agencies are not in the "Financial Services Business."**

8       Like traditional insurance agencies, businesses that provide "financial

9   services" do not fall within the ambit of the 7(i) exemption.  29 C.F.R. § 779.317;

10  *see also Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 292 (1959) (company engaged in

11  making personal loans and purchasing conditional sales contracts from dealers was

12  not a retail establishment); *but see Gatto*, 442 F. Supp. 2d at 539 (mortgage brokers

13  were subject to the 7(i) exemption despite providing services related to loans).  Bail

14  bond agencies, however, are not remotely similar to financial services businesses.

15      Like the check cashing business that was found to be retail in *Goldstein v.*

16  *Dabanian,* 291 F.2d 208 (3d Cir. 1961), Aladdin's bail agents are not bankers.

17  Aladdin does not lend money, accept deposits, charge interest, or hold funds, nor

18  does it offer financial products such as loans, mortgages or investments.  (Esparza

19  63:1-4; Mutter ¶ 18.)  Aladdin simply charges a fee for its services, and the sole

20  service Aladdin performs is pretrial release.  The pre-trial release service provided

21  to Aladdin's customers is clearly a retail service in that it is a purely local, personal

22  service for the neighborhood people who patronize the company.  *See Goldstein*,

23  291 F.2d at 211.

24      Finally, the U.S. government classifies the bail industry differently than

25  financial services businesses.  NAICS Sector 81 ("Other Services"), which includes

26  ───────────────────
(footnote continued from previous page)

27  authorizing them to solicit and negotiate bail undertakings on behalf of a surety
    insurer, bail permittees merely post a bond conditioned on the proper application

28  and disposal of all money collected by the bail permittee. *Id.* §§ 1802.1, 1802.5.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

24

SACV 09-00099 AG (RNBx)

1  bail agents, does not include any of the financial services industries, which are

2  separately and distinctly classified.[26]  In short, Aladdin has none of the indicia of a

3  "financial services" business, and is recognized as being in a totally separate

4  industry.

5          **V.      ESPARZA'S REMEDIAL STATE LAW CLAIMS**

6               **FAIL WITH HIS FLSA CLAIMS**

7          Esparza's states law remedial claims for alleged violations of Labor Code

8  section 203 and Business & Professions Code section 17200 rest entirely on the

9  alleged FLSA violations.  Because Esparza is properly exempt under Section 7(i),

10  and therefore not entitled to overtime under the FLSA, his derivative state law

11  claims also fail as a matter of law.

12              **VI.      CONCLUSION**

13          For the reasons set forth herein, defendant Two Jinn, Inc., d/b/a Aladdin Bail

14  Bonds respectfully requests this Court grant its motion for summary judgment or, in

15  the alternative, for partial summary judgment.[27]

16   Dated:  April 26, 2010                    PAUL, PLEVIN, SULLIVAN &
                                               CONNAUGHTON LLP
17

18                                            By: _s/Fred M. Plevin_____
                                                  FRED M. PLEVIN
19                                                JEFFREY P. AMES
                                                  Attorneys for Defendant
20                                                TWO JINN, INC.

21

22

23  _____

    [26] Sector 52 and its subsectors cover the entire financial services industry, including
24  subsector 522 ("Credit Intermediation and Related Activities" such as commercial
    bankers, savings institutions, secured and unsecured lenders, mortgage brokers and
25  credit card issuers) and subsector 523 ("Securities, Commodity Contracts, and Other
    Financial Investments and Related Activities" such as investment bankers, and
26  securities and commodities brokers.  Ex. 35

27  [27] If for any reason summary judgment or partial summary judgment cannot be had,
    Aladdin requests, as an alternative relief, an order specifying that the facts set forth
28  in Aladdin's Notice of Motion are not in dispute.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

25

SACV 09-00099 AG (RNBx)