David D. Deason (CA SBN 207733)
email: david@yourlaborlawyers.com
Matthew F. Archbold (SBN 210369)
e-mail: matthew@yourlaborlawyers.com
DEASON & ARCHBOLD
3300 Irvine Avenue, Suite 245
Newport Beach, CA 92660
Telephone: (949) 794-9560
Facsimile: (949) 794-9517

Attorneys for Individual and Representative Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ESPARZA, individually, and on behalf of the general public and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>TWO JINN, INC., an California corporation doing business as "Aladdin Bail Bonds;" and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 09-00099 AG(RNBx)<br><br>[CLASS ACTION]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REQUEST FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FINAL AWARD OF CLASS COUNSEL'S ATTORNEY FEES AND COSTS, AND NAMED PLAINTIFF'S ENHANCEMENT**<br><br>Date: October 22, 2012<br>Time: 10:00 a.m.<br>Judge: Andrew J. Guilford<br>Courtroom: 10D<br><br>Complaint Filed: January 22, 2009 |

i

## I. INTRODUCTION AND BRIEF SUMMARY OF CASE

Pursuant to the Court's Order on Preliminary Approval, Plaintiff/Class Representative submits these papers in support of his Request for Final Approval of the Class Action Settlement. This matter was filed as what is commonly called a "hybrid" or "Dual" Collective/Class Action, pursuant to FLSA, 29 U.S.C. § 216(b) (hereafter "§ 216(b), and FRCP, Rule 23. On September 21, 2009, the Court granted certification of the FLSA claims under §216(b), and certification of the Cal. B&P Code Section 17200 (hereafter "UCL") claims and Cal. Labor Code § 203 penalties, under FRCP, Rule 23. Class Members seek recovery of overtime and liquidated damages under the FLSA, restitution (back overtime) under the UCL, and penalties under Cal. Labor Code § 203. Notice of Class Certification and the opportunity to join the FLSA collective action was sent to Class Members on or about December 11, 2009. The Rule 23 Class consists of 404 current and former Bail Agents employed by Defendant and paid on a purely commission basis from January 22, 2005 through December of 2010. The period of time that Bail Agents were paid on a salary basis (January of 2006 through May of 2007) is excluded from the Class definition. In December of 2010, Defendant began paying its Bail Agents on an hourly basis and compensating for all overtime hours worked, and thus, December 2010 marks the conclusion of the Class period. (See Motion for Prelim. Approv., Exhibit D, ¶ 4.) Including Plaintiff, seventy-seven (77) Bail Agents originally opted into the FLSA collective action.

On September 22, 2010, the Court granted Class Members' Motion for Summary Adjudication, concluding that Defendant was not a "retail establishment," as defined under the FLSA, and therefore liable for the payment of overtime compensation to the Class Members. However, the Court denied Class Members' Motion on the issue of liquidated damages and willfulness. (See Prelim. Motion Prelim. Approv., Exhibit F, pg. 9.) On October 7, 2009, Defendant filed with the Ninth Circuit a Petition for Permission to Appeal pursuant to FRCP, Rule

1

23(f). The Ninth Circuit granted this Petition on December 8, 2009. The primary issues on appeal are (1) the permissibility of the "hybrid" or "Dual" Collective/Class Action and (2) the applicability of "safe harbor" exception to *California Business and Professions Code § 17200, et seq.* (Declaration of David D. Deason in Support of Final Approval ("Deason Dec."), ¶ 2.) In March of 2011, Defendant filed a Motion to Stay the proceedings pending the Ninth Circuit's decision on the Rule 23(f) Appeal. The Court granted Defendant's Motion and stayed the trial court proceedings on April 11, 2011.

The Parties appeared at mediation on August 23, 2011, before Judge Edward Infante, but were unsuccessful in their attempts at resolution. Settlement negotiations resumed after briefing on the above mentioned appeal was completed and filed. After several months of intense negotiations, the Parties reached an agreement upon the terms set forth in the Settlement Agreement submitted as Exhibit A with the Motion for Prelim. Approval. Appeal proceedings were stayed pending final approval of this settlement. (Deason Dec. ¶ 2.)

## II. NOTICE OF SETTLEMENT, CLAIMS SUBMITTED, OBJECTIONS, OPT-OUTS AND CLASS RECOVERY

On July 24th, 2012, the Court granted Preliminary Approval of the Settlement. The Notice of the Settlement, as approved by the Court, was mailed to the 404 Class Members on August 7, 2012. (Deason Dec. ¶ 3.) The deadline to submit a claim, object to the settlement, or Opt-out was October 6, 2012. No objections to the Settlement were submitted. To date, Plaintiffs' counsel is not aware of any class member having expressed any opposition to the proposed settlement. (Deason Dec., ¶ 4.) A single Class Member chose to opt-out. The seventy-seven (77) Class Members that opted into the FLSA collective action in 2010 received the same Notice, but were advised that they need not submit a Claim Form and are deemed to have already submitted their claim for recovery. Of the remaining 327 Class Members, 196 submitted timely Claim Forms. All totaled,

273 of the 404 Class Members have submitted claims or opted into the case, which is roughly 68% of the total Class. (*Id.*)

When an employee is paid on a commission basis, the total compensation paid for the week is divided by the total number of hours worked to obtain the employee's regular hourly rate of pay. The employee must then be paid extra compensation at one-half of the regular hourly rate for each hour worked in excess of forty (40) per week. (29 C.F.R. § 778.118.) The average premium (1/2 time) hourly rate of pay for Class Members is $16.44 (regular rate of pay is $32.88). (Motion for Prelim. Approv., Exhibit D, ¶ 5.) Thus, the average recovery for each Class Member would be $16.44 per overtime hour worked. Class Members worked a total of 30,500 workweeks and worked an average of 4.1 overtime hours per week. (*Id.*) These numbers were calculated by Defendant after a review of the time and payroll records of all Class Members and declared to under oath, but are also consistent with the analysis of the time and payroll records conducted by Class Counsel. (*Id.*; Motion for Prelim. Approv. Deason Dec. ¶17.)

As anticipated, the actual amount paid to each Class Member will exceed the *minimum* recovery. The Settlement provides that Defendant does not recover any of the unclaimed settlement funds and Class Members that show an interest by making claims are rewarded with an increased recovery. Though the final numbers may differ slightly, each of the 273 Class Members that submitted a Claim/Opt-in will receive approximately $50 dollars per workweek, which results in a recovery of about 75% of all overtime hours on the books. (Deason Dec. ¶ 5.)

### III. THE PROPOSED ATTORNEY FEES ARE REASONABLE

The Court specifically noted at the hearing on Preliminary Approval that the fees requested by Class Counsel appeared reasonable. (Deason Dec. ¶ 6.) It noted the substantial amount of work performed by Class Counsel in this matter over the previous years, as well as the difficulty of the case and its complexity. The Court confirmed these statements in its Order of Preliminary approval, but allowed for a

reduction of the fees at Final Approval should it be warranted. Finally, the Court also requested that Class Counsel address the holding in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). (*Id.*)

### A. THE FEES REQUESTED ARE REASONABLE

The instant action was vigorously litigated for three and one-half (3 ½) years before the filing of the instant Motion. (Deason Dec. ¶ 7.) Class Counsel prepared and/or opposed more than a half dozen different Motions, including Class Certification; cross motions for Summary Adjudication; a Motion for Judgment on the Pleadings; three (3) Motions for Interlocutory Appeal and/or Stay; and a Petition for Appeal under Rule 23(f). (*Id.*) The Parties also fully briefed an appeal before the Ninth Circuit on various issues related to liability and certification. (*Id.*)

Moreover, discovery in this case was thorough and extensive, including several depositions, extensive written discovery, the production of thousands of pages of documents, interviewing and consulting with Class Members, the negotiation of a Protective Order, and the interview and retention of expert witnesses. (Deason Dec. ¶ 8.) Defendant has produced, and Class Counsel has reviewed, literally thousands of pages of documents on issues of class certification, liability and damages, including, but not limited to, Defendant's policies and procedures; memos; training manuals; scheduling, timesheet and payroll records; and documents related to Class Members' job duties and expectations. (Deason Dec. ¶ 9.) These documents were reviewed in detail to determine the average hourly rate of pay, average number of overtime hours worked per week, and the total number of workweeks for each Class Member. (*Id.*) Class Counsel has engaged in countless conversations with Class Members over the past three and a half (3 1/2) years and prepared numerous pleadings. (*Id.*)

Further, the Court has quite properly noted that several issues in dispute in this matter are rather novel, and thus, required extensive research and investigation. (Deason Dec. ¶ 10.) In addition to all known authority on the Retail

Commission Exemption, "safe harbor" exception under the UCL, and the permissibility of "hybrid" class actions, both Parties researched and analyzed bail law and procedures from dozens of different states, citing such authority and analysis in their respective MSA, in the hopes of shedding additional light on the issue of whether the bail industry qualifies as "retail" under the FLSA. (*Id.*)

Finally, Class Counsel engaged in lengthy settlement negotiations over the course of ten (10) months, including a mediation before Judge Edward Infante on August 23, 2011, wherein both sides prepared and submitted detailed briefs to the mediator. (Deason Dec. ¶ 11.) The Parties ultimately agreed upon the basic terms of settlement on February 2, 2012. (*Id.*) Over the next several months, the parties negotiated the final terms of settlement and went back and forth on the language of the Notice of Preliminary Approval, Opt-in and Claim Form and Stipulation of Settlement. (*Id.*)

The requested fee is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent basis. Defendant's agreement not to oppose the requested fees and costs is not improper. Such agreements facilitate settlement because Defendant knows their total maximum exposure, and plaintiffs know that they will not be "sandbagged" at the settlement hearing. (*Malchman v. Davis*, 761 F.2d 893, 905, fn. 5 (2nd Cir. 1985).)

As of the time of the filing of the Motion for Preliminary Approval, Class Counsel's fees to date were $649,325 (1,367 hours at $475 per hour). (Deason Dec. ¶ 12.) Since filing the motion for Preliminary Approval, Class Counsel has reviewed and responded to more than 200 emails from the Claims Administrator, defense counsel, and Class Members. Additionally, Class Counsel has spoken to dozens of Class Members on the telephone about the Settlement and prepared this brief in support of Final Approval. These activities have further increased the hours worked by Class Counsel on this matter by 56.6 hours, thus, increasing the total fees incurred at $475 dollars per hour to $676.210 (1,423 hours x $475). (*Id.*)

The appeal in *Bluetooth* was motivated by facts and settlement terms completely different than the case at bar, as discussed more thoroughly below. It is important to realize at the outset that the holding in *Bluetooth* did not overrule or even question any previous holdings by the Ninth Circuit on approval of requests for attorney fees or the necessity to provide complete billing records. The *Lobatz v. U.S. West Cellular of California* decision cited by Class Counsel in its Motion for Preliminary Approval is still good law, and should control. Indeed, the court in *Bluetooth* specifically cited to the same portion of the decision in *Lobatz* as Class Counsel in setting forth the pertinent standard of review on requests for attorney fees. (*In Re Bluetooth*, 654 F.3d. 935, 940; citing *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3 1142, 1148-1149 (9th Cir. 2000).) In *Lobatz*, the Court specifically held that, barring some evidence of collusion, the Court is not required to examine class counsel's contemporaneous time records, conduct and intensive inquiry, or enlist the services of a special master, when it approved awards of costs and attorney fees to class counsel following settlement of class action, in which defendant agrees that fees and costs would be paid separately from class settlement. (*Lobatz* at 1048-1049.) A summary of activities performed and fees accumulated, as has been provided via declaration in both these Final Approval papers and the Motion for Preliminary Approval, coupled with some evidence that the fees sought are reasonable is sufficient. (*Id.*) With its moving papers on Preliminary Approval, Class Counsel provided the amount of hours worked to date, the hourly rate, and a detailed summary of the work performed. At the hearing, the Court noted that Class Counsel had performed a substantial amount of work in the case and stated that the request for fees appeared reasonable.

Unlike the settlement terms in *Bluetooth*, there is nothing in the facts, settlement terms, or surrounding circumstances to indicate collusion or a failure of Class Counsel to represent the interests of the Class, and thus, the heightened scrutiny that the Court in *Bluetooth* acknowledges it applied is not warranted.

## B. THE DECISION IN *BLUETOOTH* IS CLEARLY DISTINGUISHABLE AND OF LITTLE IMPORT IN EVALUATING THE FEES REQUESTED BY CLASS COUNSEL

The settlement in *Bluetooth* has almost nothing in common with the settlement in the instant case. (*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). The Complaint in *Bluetooth* sought money damages on behalf of millions allegedly misled regarding the safety and usability of the product. A motion to dismiss was filed by Defendant and fully briefed by both sides, but before the court heard argument, and before any motion was made to certify a class for merits purposes, the parties reached an agreement on settlement. (*Id.* at 939) The settlement agreement approved by the court in *Bluetooth* provides the class $100,000 in *cy pres* awards and **zero dollars for economic injury**, while setting aside up to $800,000 for class counsel. (*Id.* at 939-940 [**emphasis added**]).) Class members (collectively "Objectors") challenged the fairness and reasonableness of the settlement and appealed both the approval and fee orders, "arguing the district court abused its discretion in failing to consider whether the gross disproportion between the class award and the negotiated fee award was reasonable." (*Id.* at 938.) The court, in deciding in favor of the objectors reasoned "that the disparity between the value of the class recovery and class counsel's compensation raises at least an inference of unfairness, and that the current record does not adequately dispel the possibility that class counsel bargained away a benefit to the class in exchange for their own interests." (*Id.*) The court vacated the approval orders and remanded "so that the district court may conduct a more searching inquiry into the fairness of the negotiated distribution of funds, as well as consider the substantive reasonableness of the attorneys' fee request in light of the degree of success attained." (*Id.*)

Simply put, the terms of settlement and overall facts in the instant case are nothing like those of *Bluetooth*. Unlike *Bluetooth* where the Class Members

received no monetary recovery at all against $800,000 in fees, the amount of recovery in the instant case is $1,425,000, only $475,000 of which compensates Class Counsel. $925,000 of the settlement fund shall compensate Class Members. As discussed above, there were no objections filed or otherwise submitted to the Claims Administrator, Class Counsel or Defendant, and 68% of the Class Members have submitted claims for recovery. In the end, those Class Members will recover more than three (3) hours per week of overtime compensation ($50 per workweek), which is substantial considering that the records indicate the average amount of overtime hours worked per week to be only four (4).

Class Members prevailed on the issue of liability via summary adjudication, and thus, Class Counsel was guaranteed an award of fees at trial that almost certainly would have exceeded the amount negotiated at settlement, especially considering the amount negotiated at settlement was far less than the fees incurred up through settlement. However, Class Counsel did not want ever climbing attorney fees to push the Parties further apart in their respective settlement positions. (Deason Dec. ¶ 13.) Therefore, Class Counsel agreed to substantially reduce its fees incurred in order to increase the likelihood of a reasonable compromise. On the other hand, class counsel in *Bluetooth*, faced with uncertain liability and a daunting Motion to Dismiss, appeared more concerned with salvaging something for themselves than conveying any recovery for the class.

Indeed, there is nothing about the terms of settlement or the surrounding facts of the instant case to raise the concern that Class Counsel "bargained away a benefit to the class in exchange for their own interests," as was the concern in *Bluetooth*. (*Bluetooth* at 938.) To the contrary, in light of the lack of any objectors and the unusually high claims rate, it would appear that the Class Members are quite satisfied with their recovery. In fact, Class Counsel has not received any negative response at all from Class Members regarding the proposed settlement terms. (Deason Dec. ¶ 4.)

Objectors further argued in *Bluetooth* "that even if the approval order can be upheld, class counsel should not have been awarded eight times the amount of the class recovery," but instead the negotiated sums should have been viewed as a "constructive common fund" and fees limited to an appropriate percentage thereof. (*Bluetooth* at 940-941.) Turning to the facts of the instant case, such an argument is unpersuasive because Class Counsel's fees are only one-third (1/3) of the total settlement amount. Though Class Counsel negotiated an amount of $500,000 in attorney fees, which is confirmed by the Memorandum of Understanding between the Parties, it decided to further reduce such sum to $475,000, and thus, increase the recovery to Class Members to $925,000. (Deason Dec. ¶ 14.) In Class Counsel's view, the benefit of the common public perception that one-third (1/3) is reasonable was worth the further reduction in fees. (*Id.*) Even if the Court decided to interpret the proposed Settlement as a common fund, the increased benchmark from 25% to 33% is justifiable based upon the large reduction in fees in a matter that Class Counsel has already prevailed upon; the amount of fees actually incurred; the results obtained; the risk of the litigation; and the fact that liability was a "close question," as the Court h consistently noted throughout this litigation.

In *Bluetooth,* the timing of the settlement on eve of the hearing on a Motion to Dismiss and the fact that the settlement did not provide for any economic recovery to class members indicated increased cause for concern and heightened scrutiny by the reviewing court. The court in *Bluetooth* also held that closer scrutiny was warranted for another reason not applicable to the instant case. In evaluating the proposed settlement, the court in *Bluetooth* held that close scrutiny was warranted because the terms were agreed upon prior to the formal class certification. The terms of the instant case, on the other hand, were agreed upon long after formal certification. The court in *Bluetooth* reasoned that "prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement, and thus, such agreements must withstand

an even higher level of scrutiny for evidence of collusion than is ordinarily required under Rule 23(e). (*Bluetooth* at 946-947; citing *Hanlon v. Chrysler Corp.*,150 F.3d 1011, 1026 (9th Cir. 1998); *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F3d 768, 805 (3rd Cir.1995) [courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified."].)

Finally, the court in *Bluetooth* noted that "collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." However, no such signs exist in the instant case, and thus, the decision in *Bluetooth* is of little import to the proposed settlement.

## VI. CONCLUSION

For all the foregoing reasons, this Court should grant Final Approval of the Class Actions Settlement, Award of Class Counsel's Attorney Fees and Costs, and Named Plaintiff Enhancements. The Court should further approve and authorize that all payments and obligations shall be made in accordance with the terms of the Stipulation for Settlement.

DATED: October 8, 2012

DEASON & ARCHBOLD

By: _____
Class Counsel
David D. Deason